UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDREW YANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-1698 (ABJ) |
| | ) | |
| CAROL SPAHN, | ) | |
| *Chief Executive Officer, U.S. Peace Corps*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM OPINION

On June 24, 2021, plaintiff Andrew Yang brought this action in the United States District Court for the District of Columbia against the Director of the Peace Corps, defendant Josephine K. Olson.[1] Compl. [Dkt. # 1].[2] Plaintiff, a former Peace Corps volunteer in the country of Georgia, alleges that defendant unlawfully discriminated against him on the basis of his sex and unlawfully retaliated against him for his protected complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Am. Compl. ¶¶ 4, 26–27, 32. These events, plaintiff claims, led to the termination of his employment. Am. Compl. ¶¶ 27, 32.

The defendant filed a motion to dismiss these counts pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss [Dkt. # 14], Mem. of Law in Supp. of Def.'s Mot. to

---

1   On December 9, 2021, Carol Spahn, the Chief Executive Officer of the Peace Corps, was automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

2   Plaintiff filed an amended complaint on July 5, 2021 – eleven days after filing his first complaint. Am. Compl. [Dkt. # 6] at 6; Compl. at 6. This did not require the Court's permission because "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A).

Dismiss [Dkt. # 14-1] ("Mot. to Dismiss").  The motion is fully briefed.  *See* Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss [Dkt. # 18] ("Opp. to Mot. to Dismiss"); Def.'s Reply Mem. in Further Supp. of Mot. to Dismiss [Dkt. # 19] ("Reply in Supp. of Mot. to Dismiss"); Notice of Suppl. Authority [Dkt. # 21].

On December 20, 2022 – nearly a year and a half after his complaint was originally filed – plaintiff filed what was styled as an "expedited motion," to amend his complaint again pursuant to Federal Rule of Civil Procedure 15(a)(2).[3]  Pl.'s Expedited Mot. to File Second Am. Compl. Pursuant to Fed. R. Civ. P. 15(a)(2) [Dkt. # 23] ("Mot. to Amend") at 1.  While he does not seek to change the first count alleging discrimination and retaliation, the proposed second amended complaint adds two additional claims:  one for breach of contract and one arising under the Administrative Procedures Act ("APA").  *Id.*; *see* Second Am. Compl., Mot. to Amend [Dkt. # 23-1] ("Proposed Compl.") ¶¶ 38–44.[4]  Defendant opposes the motion.  Def.'s Opp. to Pl.'s Mot. to

---

3   On December 2, 2021, plaintiff attached a proposed amended complaint to his opposition to defendant's motion to dismiss, informing the Court he was including it in case "this Court believes the Amended Complaint to be insufficient to survive Defendant's motion."  Opp. to Motion to Dismiss at 5; *see* Proposed Second Am. Compl. [Dkt. # 18-1].  Because plaintiff had already amended his pleading and more than twenty-one days had passed, plaintiff could not amend the complaint without either "the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2), and he did not include an actual motion to amend at that time.  "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. . . . To hold otherwise would mean that a party could unilaterally amend a complaint at will."  *Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) (internal quotation marks and citations omitted); *see also Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) (citing cases) ("It is well settled law that a plaintiff cannot amend [the] complaint by the briefs in opposition to a motion to dismiss.").  Therefore, the Court did not treat that proposed amended complaint as a motion for leave to amend, and that proposed amended complaint is not the one before the Court at this time.

4   The proposed second amended complaint emphasizes that defendant seeks as relief for the Peace Corps to reinstate him as a Volunteer.  Request for Relief, Proposed Compl. ¶¶ 1–2; Proposed Compl. ¶ 1.  This is not a new request, though, since the operative complaint also includes "reinstatement" in the relief sought.  Request for Relief, Am. Compl. ¶ 1.

Amend [Dkt. # 24] ("Opp. to Mot. to Amend"); *see also* Pl.'s Reply Mem. on His Mot. to File Second Am. Compl. [Dkt. # 25].

Because even the proposed second amended complaint fails to state a claim upon which relief can be granted, the Court will **DENY** plaintiff's motion to amend as futile, and **GRANT** defendant's motion to dismiss.

## FACTUAL BACKGROUND

In December 2019, plaintiff was employed as a Peace Corps volunteer in the country of Georgia. Am. Compl. ¶¶ 4, 7; Proposed Compl. ¶¶ 4, 7.[5] On December 17, plaintiff alleges, Melanie Emerson, his Country Director, presented him with a memorandum that contained "unspecified allegations against him" and a "no-contact order with a complaining female volunteer" ("Complaining Volunteer"). Am. Compl. ¶ 7; Proposed Compl. ¶ 7. The memorandum stated:

> The purpose of this memorandum is to inform you that for your own protection and due to an open allegation we are looking into, effective immediately, I am issuing these instructions to you and imposing the following conditions . . . until further notice:
>
> - You are required to stay away from and refrain from having any form of contact with [Complaining Volunteer], directly or through proxies, whether in person, by phone, in writing, via electronic means or via social media, or through a third party until further notice.
>
> - During the . . . conference [on] December 17–20, 2019, you must not have any interactions or communications with [Complaining

---

5   Although plaintiff's start date is not included in the amended complaint, it appears that plaintiff began training for his position prior to December 2019. *See* Letter from Melanie Emerson, County Dir., Peace Corps, to Andy Yang, Volunteer, Peace Corps Georgia (Dec. 21, 2019), Ex. B. to Mot. to Dismiss [Dkt. # 14-3] ("Dec. 21, 2019 Letter") ("In November, 2019, Peace Corps Georgia received allegations that you engaged in stalking and sexual harassment against a female Volunteer (then Trainee)."); Ex. 1 to Reply in Supp. of Mot. to Dismiss [Dkt. # 19-1] at 5 (referencing "training days back in June").

> > Volunteer], and you must at all times stay at least 10 feet away from her.
>
> > ▪ You are prohibited from engaging in communications of any kind, including social media with other Peace Corps Georgia Volunteers, concerning this allegation and my instructions to you regarding no contact.
>
> If you are found to have violated any aspect of these instructions . . . , you may be subject to disciplinary action up to and including administrative separation.

Letter from Melanie Emerson, County Dir., Peace Corps, to Andy Yang, Volunteer, Peace Corps Georgia (Dec. 17, 2019), Ex. A. to Mot. to Dismiss [Dkt. # 14-2] ("Dec. 17, 2019 Letter") at 2.[6] Plaintiff's signature appears at the bottom of this letter, which is dated December 17, 2019. *Id.*

Plaintiff claims that "[t]he issuance, content, and implementation of the memo by [d]efendant violated proper procedures" that are set out in the Peace Corps Manual's interim policy statement ("IPS"). Am. Compl. ¶ 9; Proposed Compl. ¶ 9. IPS 1-12, entitled "Procedures for Handling Complaints of Volunteer/Trainee Sexual Misconduct," provides:

> The Country Director (CD) is responsible for the following:
>
> . . . .
>
> > (c) Meeting with the Accused V/T [("Volunteer/Trainee")], preferably in person, following consul[t]ation with [the Office of the Inspector General ("OIG")] and [the Office of General Counsel

---

6   In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997); *see* Fed. R. Civ. P. 10(c). A document may be incorporated by reference even if it "is not attached by the plaintiff," as long as it "is referred to in the complaint and integral to the plaintiff's claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (internal brackets and quotation marks omitted).

Here, the Dec. 17, 2019 Letter is explicitly referenced in plaintiff's amended complaint and in the proposed second amended complaint; indeed, many of the allegations arise from the contents of that document. *See* Am. Compl. ¶¶ 7, 9, 16, 17; Proposed Compl. ¶¶ 7, 9, 18, 19.

>> ("OGC")], [the Office of Safety and Security ("OSS")], and the appropriate Regional Director.  During that meeting or conversation, the CD shall:
>>
>>> (1) Provide the Accused V/T with a general explanation of IPS 1-12 Volunteer/Trainee Sexual Misconduct and these Procedures.
>>>
>>> (2) Inform the Accused V/T that the Accused V/T is the subject of a Sexual Misconduct Complaint brought by another V/T.
>>>
>>> (3) Advise the Accused V/T that the Accused V/T may, if needed, seek mental health services from the Counseling and Outreach Unit (COU) in the Office of Health Services (OHS); and
>>>
>>> ([4]) Inform the Accused V/T that the Accused V/T may resign at any time, in accordance with section 6.2 below.

Peace Corps, *IPS 1-12 Procedures for Handling Complaints of Volunteer/Trainee Sexual Misconduct* (effective July 3, 2019), available at https://files.peacecorps.gov/documents/IPS-1-12-Interim-Procedures.pdf (section 3.1); *see* Proposed Compl. ¶ 10.

Plaintiff asserts in the proposed second amended complaint that Emerson did not follow the procedures set out in the Manual when she met with him, and therefore, he did not "fully understand his rights under the policies and how best to proceed." Proposed Compl. ¶ 11. Plaintiff also claims that he signed the Dec. 17, 2019 Letter when he met with Emerson that day, "immediately without reading it thoroughly," because she had "ordered" him to do so. Am. Compl. ¶ 7; Proposed Compl. ¶ 7. Plaintiff alleges that Emerson refused to provide him with a copy of the letter or any details of the allegations that were being levied against him. Am. Compl. ¶¶ 7–8; Proposed Compl. ¶¶ 7–8. He complains that "[n]o one . . . ever asked [him] about the allegations against him or requested any information or documentation from him to refute the allegations." Am. Compl. ¶ 19; Proposed Compl. ¶ 22.

Plaintiff alleges that on the evening of December 17, 2019 – following the meeting with Emerson, but, according to plaintiff, before he received a copy of the letter – he "discussed with other volunteers the potential nature of the allegations and the possible identity of the [Complaining Volunteer]." Am. Compl. ¶ 10; Proposed Compl. ¶ 12. Later that same evening, plaintiff alleges, the Complaining Volunteer approached him, but he refused to respond or engage with her and he texted Emerson to inform her of the "unauthorized contact." Am. Compl. ¶¶ 11–13; Proposed Comp. ¶¶ 13–15.

On the following morning, December 18, 2019, Emerson responded to plaintiff's text message and told him that she "had placed the no contact order on [p]laintiff, not the [Complaining Volunteer]." Am. Compl. ¶ 14; Proposed Compl. ¶ 16. That afternoon, plaintiff alleges, he complained "via message" to the OIG of the Peace Corps about "the vagueness of the allegations against him, Emerson's refusal to tell him what he was being accused of, and the Agency's refusal to allow [p]laintiff to refute the allegations against him or provide his side of the story." Am. Compl. ¶ 15; Proposed Compl. ¶ 17.[7] The complaint alleges that plaintiff received a copy of the Dec. 17, 2019 letter he had signed the day before at approximately 1:37 p.m. Am. Compl. ¶ 16; Proposed Compl. ¶ 18; see Letter from Melanie Emerson, County Dir., Peace Corps Georgia, to Andy Yang, Volunteer, Peace Corps Georgia (Dec. 21, 2019), Ex. B. to Mot. to Dismiss [Dkt. # 14-3] ("Dec. 21, 2019 Letter") at 2 ("I emailed you a scanned copy of the signed [Dec. 17, 2019 Letter] on December 18, 2019.").[8]

---

[7] The following day, plaintiff also sent a detailed follow-up e-mail to the OIG, with the same complaints. Am. Compl. ¶ 15; Proposed Compl. ¶ 17.

[8] Like the Dec. 17, 2019 Letter, the Dec. 21, 2019 Letter is not expressly incorporated in the complaint. But it is referred to in plaintiff's amended complaint and proposed second amended complaint. See e.g., Am. Compl. ¶¶ 20–21; Proposed Compl. ¶¶ 24–25.

On December 20, 2019, plaintiff alleges, he met with Emerson for a second time and she "berated him" for speaking to others about the Dec. 17, 2019 Letter, in violation of its terms.  Am. Compl. ¶ 17; Proposed Compl. ¶ 19; *see also* Dec. 17, 2019 Letter at 2.  Plaintiff claims he told Emerson that he was unaware that his discussions with the other volunteers violated the terms of the Dec. 17, 2019 Letter, which he did not have at the time.  Am. Compl. ¶ 18; Proposed Compl. ¶ 21.

On December 21, 2019, Emerson issued another letter.  Am. Compl. ¶ 20; Proposed Compl. ¶ 24; Dec. 21, 2019 Letter.  It reported:

> In November[] 2019, Peace Corps Georgia received allegations that you engaged in stalking and sexual harassment against a [Complaining Volunteer] (then Trainee).  These matters were referred to the Office of Inspector General for investigation, and on November 27, 2019, OIG referred the matter back to Post for inquiry and administrative action.  Pending that inquiry, I issued you no contact instructions in person on Tuesday, December 17, 2019, 2:30 pm . . . .
>
> . . .
>
> It has recently come to my attention that on the evening of December 17, 2019[,] you violated my instructions by communicating with other Volunteers about your speculations on the nature of the allegation referenced in my instructions , the identity of the [Complaining Volunteer], and my instructions to you regarding no contact.
>
> . . .
>
> As a result of your failure to comply with my instructions issued to you on December 17, 2019, I am considering you for administrative separation from service . . . .  You have the right to respond in writing to this memorandum no later than 12:00 pm on Sunday, December 22.  Following consideration of your response, I will make a final decision with the concurrence of the Regional Director for the EMA Region.  You have the option to resign in lieu of administrative separation at any time up to 24 hours after a final decision has been made.

Dec. 21, 2019 Letter at 1–2, quoting the Dec. 17, 2019 Letter at 1.

Plaintiff alleges that when Emerson issued this second letter, she "knew that [he] had complained to the [OIG's] office about her handling of the discriminatory allegations against him and her violation of proper procedures in addressing the allegations." Am. Compl. ¶ 22; Proposed Compl. ¶ 26; *see also* Proposed Compl. ¶ 20. For this reason, according to plaintiff, the letter was an act of retaliation. Am. Compl. ¶ 27; Proposed Compl. ¶¶ 20, 31.

In the proposed second amended complaint, plaintiff also claims that the Peace Corps "failed to follow the procedures set forth in [Manual Section ("MS")] 271 Confidentiality Protection which prohibit reprisal against any Volunteer, like [p]laintiff, who brings to the attention of the OIG any allegations of mismanagement that relate to Peace Corps operations." Proposed Compl. ¶ 23; *see* Peace Corps, *MS 271 Confidentiality Provision* (effective July 22, 2013), available at https://files.peacecorps.gov/documents/MS-271-Policy.pdf (section 3.0(f): "Peace Corps staff are prohibited from retaliating against any Volunteer who raises any allegations or concerns [to the OIG]."; section 6.0(a): "No Peace Corps staff person may retaliate against a Volunteer because the Volunteer reported an allegation or concern under Section 3 above.").

Two days later, on December 23, 2019, plaintiff informed Emerson in an email that he "wished to exercise his option to resign in lieu of termination." Am. Compl. ¶ 23; Proposed Compl. ¶ 27. In his complaint, plaintiff characterizes this event as a "constructive discharge." Am. Compl. ¶ 23; Proposed Compl. ¶ 27. Plaintiff's resignation became effective on January 9, 2020. Am. Compl. ¶ 24; Proposed Compl. ¶ 28.

Plaintiff alleges that he filed a timely EEO petition, and subsequently "filed a formal complaint with [d]efendant, designated Agency Case No. PCV-20-06." Am. Compl. ¶ 28;

Proposed Compl. ¶ 32. On May 28, 2021, defendant issued a Final Agency Decision in Agency Case No. PC-20-06, from which plaintiff now appeals. Am. Compl. ¶ 29; Proposed Compl. ¶ 33.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave, and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has emphasized this standard: "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). But a court "may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "[f]irst, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

9

at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ANALYSIS

Defendant argues that neither plaintiff's original claims alleging sex discrimination and retaliation, nor the proposed additional claims alleging breach of contract and an APA violation, state a claim that would survive a motion to dismiss. She maintains that amending the complaint to include the breach of contract and APA claims would be futile, and that the complaint should be dismissed.

**I.    Sex Discrimination Claim**

Plaintiff alleges that the defendant unlawfully discriminated against him on the basis of his sex, in violation of Title VII, by "receiving a compl[ai]nt from a female volunteer about him but not telling him who complained, what conduct the complaint was about, or conduct[ing] any

10

investigation into the claims. Defendant just accepted these allegations . . . and then informed him that he was going to be administratively separated." Am. Compl. ¶ 26; Proposed Compl. ¶ 30. Defendant contends that plaintiff "resigned rather than face the possibility of further investigation into his alleged misconduct and any consequences." Mot. to Dismiss at 5–6; *see id.* at 5–9; *see also* Am. Compl. ¶ 23; Proposed Compl. ¶ 27. Therefore, defendant argues, plaintiff has failed to allege he was subjected to any action that would constitute the adverse employment action that is a necessary element of a discrimination claim, not even a constructive discharge. *Id.* at 5–14.

To prevail on a claim for discrimination under Title VII, at the motion to dismiss stage, a plaintiff must establish "(1) [h]e is a member of a protected class;[9] (2) [h]e suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006), quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999), *overruled on other grounds by Chambers v. Dist. of Columbia*, 35 F.4th 870 (D.C. Cir. 2022).

An adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In "a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign . . . Title VII treats that resignation as tantamount to an actual discharge." *Green v. Brennan*, 578 U.S. 547, 555 (2016), quoting

---

9  Plaintiff has alleged he is a male who was unlawfully discriminated against on the basis of his sex, and that puts him within a protected class. Am. Compl. ¶ 26; Proposed Compl. ¶ 30.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (internal quotation marks and citation omitted). This is called a "constructive discharge." *Id.*

The test for constructive discharge is objective: "[d]id working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Suders*, 542 U.S. at 141. "[T]o establish 'constructive discharge,' the plaintiff . . . must show that the abusive working environment became so intolerable that [their] resignation qualified as a fitting response." *Id.* at 134. This "requires a finding of discrimination *and* the existence of certain 'aggravating factors.'" *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006), quoting *Mungin v. Katten Munchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (emphasis in original). "'Aggravating factors' are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job." *Id.* But, "where an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Keyes v. District of Columbia*, 372 F.3d 434, 439 (D.C. Cir. 2004) (internal citation and quotation marks omitted).

Even read in the light most favorable to the plaintiff, nothing in the complaint gives rise to a plausible inference that plaintiff was forced to resign due to an intolerable working environment. Plaintiff announced his resignation just two days after he was told that his separation was under consideration, and he does not provide any information about how he was treated during that brief period. The complaint is devoid of any facts that would fall within the category of "aggravating factors" that would prevent a reasonable employee from seeking remediation on the job. Indeed, plaintiff himself characterized his resignation as an "option" at the time, and one that he wished to exercise "in lieu of termination." Am Compl. ¶ 23; Proposed Compl. ¶ 27; *see* Dec. 21, 2019

Letter at 2. And although plaintiff alleges now that defendant "informed him that he *was* going to be administratively separated" and "*determined* [*he*] *would* be administratively separated," Am Compl. ¶¶ 26–27 (emphasis added); Proposed Compl. ¶¶ 30–31 (same), this summary is inconsistent with the Dec. 21, 2019 Letter that is incorporated in the complaint. Emerson informed the plaintiff that the Peace Corps was "considering" him for administrative separation and offered him an opportunity to respond in writing before the final decision would be made. Dec. 21, 2019 Letter at 2. Moreover, plaintiff was told that he could exercise the option to resign "up to 24 hours *after* a final decision has been made." *Id.* (emphasis added). "Although choosing between [his] options may have been difficult, it was a voluntary decision nonetheless." *Keyes*, 372 F.3d at 440.

Therefore, the complaint does not plausibly allege that plaintiff's resignation was a constructive discharge, and because there is no other adverse employment action alleged in the complaint, the motion to dismiss the discrimination claim will be granted.

## II. Retaliation Claim

Title VII's anti-retaliation provision makes it unlawful for "an employer [to] 'discriminat[e] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e–3(a). The first clause, regarding employees who oppose a practice made unlawful by Title VII, is known as the opposition clause, while the second clause, regarding employees who participate in an EEO investigation, proceeding, or hearing, is known as the participation clause. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009).

In order to establish a prima facie case of retaliation, a plaintiff "must show (1) [h]e engaged in a statutorily protected activity; (2) [h]e suffered an adverse employment action; and (3) there is a causal connection between the two." *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). The D.C. Circuit has explained that when a plaintiff is alleging retaliation in response to "protected activity," "[n]ot every complaint garners its author protection under Title VII. While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (internal citations omitted) (opining that a memorandum the plaintiff sent to her supervisors and the EEO office may not have met this standard because it "did not allege . . . that she was currently being discriminated against or that she was being retaliated against for her previous lawsuit"). "[A]n employee seeking the protection of the opposition clause must demonstrate a good faith, reasonable belief that the challenged practice violates Title VII." *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (internal citation and brackets omitted).

Plaintiff does not allege that he made a charge, testified, assisted, or participated in a Title VII proceeding or investigation *prior* to the alleged act of retaliation. *See* 42 U.S.C. § 2000e–3(a).[10] But he does submit that the defendant retaliated against him on the basis of his sex for

---

10   Plaintiff does claim that he filed an "EEO petition and thereafter a formal complaint with [d]efendant," Am. Compl. ¶ 28; Proposed Compl. ¶ 32, but he does not link the alleged retaliation to the EEO petition, instead alleging that the retaliation came "after he wrote a complaint to the [OIG] about how the situation was being handled," Am. Compl. ¶ 27; Proposed Compl. ¶ 31. Because he filed his EEOC complaint after the allegedly retaliatory events occurred, it cannot serve as the basis for his retaliation claims. *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000), quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) (finding that to establish a causal connection between a protected activity and an adverse employment action, plaintiff may allege that defendant knew about the protected activity "and that the adverse personnel action took place shortly *after* that activity") (emphasis added). Here, every alleged retaliatory action by defendant took place on or before December 21, 2019, when defendant issued him the memo informing him he could resign in lieu of administrative separation.

expressing opposition to a practice made unlawful by Title VII: "[defendant] only determined [he] would be administratively separated . . . after he wrote a complaint to the Inspector General about how the situation was being handled and explained that he felt that his treatment by [defendant] was unfair and discriminatory." Am. Compl. ¶ 27; Proposed Compl. ¶ 31; *see* Am. Compl. ¶ 32; Proposed Compl. ¶ 36. In this email to the OIG, however, plaintiff does not raise concerns or assert there has been sex discrimination. His complaints instead were about "the vagueness of the allegations against him, Emerson's refusal to tell him what he was being accused of, and the Agency's refusal to allow [him] to refute the allegations against him or provide his side of the story." Am. Compl. ¶ 15; Proposed Compl. ¶ 17.[11] There are no allegations that support an inference that he ever raised concerns about sex discrimination prior to his resignation. Therefore, there are no facts to support an inference that he engaged in protected activity before he resigned. *See Broderick*, 437 F.3d at 1232.

Moreover, the Court has already found that the allegations concerning plaintiff's resignation do not add up to a constructive discharge, and plaintiff does not allege that he suffered any other adverse employment action. Given the absence of any allegation that plaintiff engaged in protected activity under Title VII, and the lack of an actionable adverse event, the Court will also dismiss the retaliation claim.

---

11  This email exchange is attached to defendant's reply as Exhibit 1. *See* Ex. 1 to Reply in Supp. of Mot. to Dismiss.

### III. Proposed Claims: Breach of Contract and APA Violation[12]

The proposed second amended complaint adds two claims: a claim for breach of contract based on defendant "refusing to follow the policies and procedures and forcing [p]laintiff to resign his position," Proposed Compl. ¶ 40; Proposed Compl. ¶¶ 38–41; and a claim under the APA alleging that the Peace Corps "unlawfully refused to comply with established procedural standards in discriminating against and terminating [p]laintiff in violation of the . . . official regulations and procedures set forth in the ***Peace Corps*** Manuals." Proposed Compl. ¶ 43 (emphasis in original).

#### A. Proposed Breach of Contract Claim

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014), quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Plaintiff alleges that "[d]efendant's issuance of binding policies and regulations in its Volunteer Handbooks and [his] adherence to those Handbooks created a binding contract between the parties under the common

---

12   Plaintiff's counsel admits in his reply in support of the motion to amend that he "overlook[ed] the Local Rule 7(m) requirement of conferring with opposing counsel prior to filing this motion" because he was sick at the time and wanted to file his motion before the "statute of limitations deadline on [p]laintiff's breach of contract claim." Pl.'s Reply Mem. on His Mot. to File Second Am. Compl. at 1.

The Rule requires that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." LCvR 7(m). This "promote[s] the resolution of as many litigation disputes as possible without court intervention, or at least . . . force[s] the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006). A district court may deny a motion to amend for failure to comply with Local Rule 7(m). *See, e.g.*, *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 478 (D.C. Cir. 2016) (recounting case history as having been dismissed in district court for, in part, failure to comply with Local Rule 7(m)). However, the Court will decline to do so in its discretion in this case.

law," and that defendant breached the contract, resulting in injury and damages to plaintiff because it "led to [him] not fully understand[ing] his rights under the policies and how best to proceed." Proposed Compl. ¶¶ 11, 39–41.

The parties dispute whether a valid contract existed between the parties. Defendant argues that the Peace Corps Volunteer Handbooks did not create binding contracts because their existence does not demonstrate "mutual intent to enter into a contract." Opp. to Mot. to Amend at 6 (internal citation omitted). But the Court does not need to reach that question. Plaintiff has failed to allege facts to show that any damage he suffered was caused by the supposed breach; rather, he specifically alleges that he exercised his option to resign. Proposed Compl. ¶¶ 25, 27. Because causation is a necessary element of a breach of contract claim, plaintiff's motion to amend his complaint with this claim is futile. *See William Loveland Coll. v. Distance Educ. Accrediting Comm'n*, 788 F. App'x 5, 6 (D.C. Cir. 2019), citing *Tsintolas*, 984 A.2d at 187; *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 736–37 (D.C. 2000) ("Under a breach of contract [theory,] a defendant is liable for such damages as are the natural consequence and proximate result of his conduct."), citing *Murphy v. O'Donnell*, 63 A.2d 340, 342 (D.C. 1948); *Dutcher v. United States*, 736 F. Supp. 1142, 1146 (D.D.C. 1990), *aff'd*, 923 F.2d 200 (D.C. Cir. 1990) ("Proximate cause is that cause which, in actual continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred.").

### B.  Proposed APA Claim

Generally, when a plaintiff challenges agency action, the APA provides a cause of action for the plaintiff and a waiver of sovereign immunity by the government. *See Am. Rd. & Transp. Builders Ass'n. v. EPA*, 865 F. Supp. 2d 72, 80–81 (D.D.C. 2012), *aff'd*, No. 12–5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) (per curiam). When that is the case, a district court has subject matter jurisdiction under 28 U.S.C. § 1331, the general federal question statute. *Id.*

However, the APA makes it clear that if another statute provides an "adequate remedy in a court," the APA cannot supply the cause of action, which means that it cannot serve as the waiver of sovereign immunity either. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review.") (emphasis added).

Plaintiff now alleges that the Peace Corps refused to comply with its procedures "in discriminating against and terminating" him in violation of the Peace Corps Manual, as required by the APA. Proposed Compl. ¶ 43. Although plaintiff has tried to reframe the legal question, he has already sought a remedy for the discriminatory and retaliatory conduct he alleges he faced at the hands of his employer under Title VII. *See* Am. Compl. ¶¶ 31–33. Since Title VII provides the plaintiff with an adequate remedy in court, plaintiff has not secured a waiver of the government's sovereign immunity, and the Court would lack jurisdiction over the proposed claim. *See Grant v. Dep't of Treasury*, 194 F. Supp. 3d 25, 30 (D.D.C. 2016) ("A plaintiff cannot challenge an administrative decision or action under the APA when there is an 'adequate remedy' against the employing agency, such as a cause of action under Title VII . . . ."). Therefore, plaintiff's motion to amend his complaint with an APA claim is also futile, and the Court will deny the motion in its entirety.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be **GRANTED**, and plaintiff's motion to amend the complaint will be **DENIED**.

A separate order will issue.

*Amy B Jackson*
AMY BERMAN JACKSON
United States District Judge

DATE:  February 9, 2023